```
                           FILED
                        MAR 15 2000
                    CLERK, U.S. DISTRICT COURT
                   EASTERN DISTRICT OF CALIFORNIA
                   BY_____
                         DEPUTY CLERK
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

DAVID M. FRIEDMAN, et al.,

        Plaintiffs,

   v.

CALIFORNIA STATE EMPLOYEES ASSOCIATION, et al.,

        Defendants.

NO. CIV. S-00-0101 WBS GGH

MEMORANDUM AND ORDER

----ooOoo----

        Plaintiffs David M. Friedman, Marion E. Smith, and Pat C. Ames are employees of the State of California organized in bargaining units represented by defendant California State Employees Association ("CSEA" or "the union"). Plaintiffs claim that they are not members of CSEA. Plaintiffs have filed a class action complaint alleging that (1) effective January 1, 2000, CSEA will improperly withhold a portion of union dues from their paychecks without providing them with the procedural safeguards mandated by <u>Chicago Teachers Union v. Hudson</u>, 475 U.S. 292 (1986); and (2) that California Government Code Section 3583.5, the code section allowing for the collection of the portion of the union dues from non-union members' paychecks, is

unconstitutional and thus, defendants are violating the First and Fourteenth amendments.

Plaintiffs move for class certification pursuant to Federal Rule of Civil Procedure 23. <u>See</u> Fed. R. Civ. P. 23. Defendants Kathleen Connell (State Controller) and CSEA each oppose the motion.[1]

I. <u>Factual and Procedural Background</u>

CSEA is the exclusive representative of all employees in bargaining units 2 (Health Care Support), 5 (Operations Support), 7 (Clerical/Administrative Support), and 9 (Technical Support) for purposes of "meeting and conferring" with "higher education employers." These four units comprise the California State University ("CSU") Division of CSEA. Plaintiff Friedman is a member of bargaining unit 7, and plaintiffs Smith and Ames are employed in bargaining unit 9.

Section 3583.5 of the California Government Code became effective January 1, 2000. This section holds that:

> [a]ny employee of the California State University or the University of California ... who is in a unit for which an exclusive representative has been selected pursuant to this chapter, shall be required, as a condition of continued employment, either to join the recognized employee organization or to pay the organization a fair share service fee.

Cal. Gov. Code § 3583.5(a)(1). Additionally, the section states:

> [t]he costs covered by the fee under this section may include, but shall not necessarily be limited to, the cost of lobbying activities designed to foster collective bargaining negotiations and contract administration, or to secure for the represented employees advantages in wages, hours, and other conditions of employment in addition to those secured through meeting and conferring with the higher

---

[1] Connell joins CSEA's opposition.

2

education employer.

Cal. Gov. Code § 3583.5(a)(2).

In mid to late November 1999, CSEA mailed a "Notice to Fair Share Fee Payers" ("Original Notice") to all nonunion members of bargaining units 2, 5, 7, and 9 informing them of their "fair share fee." Further, it informed them of their right to object to the use of their fee for purposes non germane to collective bargaining, and noted that the fee would be lower for objecting fair share fee payers. Finally, the Original Notice included an expenditure report from 1998. At the end of December 1999, CSEA sent an "Amended Notice" to the Fair Share Fee Payers further lowering the fee for individuals who objected to the fair share fee and changing several of the expenditure figures from the Original Notice. Neither notice included an audit of the financial records.

On January 22, 2000, defendants sent a copy of CSEA's audited 1998 Financial Statements ("the Audit") to all nonunion members in bargaining units 2, 5, 7, and 9. The Audit included a cover page encouraging all nonunion members to "compare the audit reports to the *California State Employee Association Notice to Fair Share Fee Payers* mailed in November and the *Amended Notice to Fair Share Fee Payers and the Supplemental 1998 Expenditure Report Information* mailed in December 1999." (CSEA 1998 Audited Financial Statements, cover page.) CSEA extended the period for nonunion members to object to the expenditure calculation to February 15, 2000.

///
///

3

CSEA attached a "January 2000 Amended Notice to Fair Share Fee Payers" to the end of the Audit materials ("January 2000 Notice"). The January 2000 Notice, among other things, lowered the fair share fee payers' dues, extended the date for individuals to object to the dues, and further reduced the objecting fair share fee payers' dues.

As of February 25, 2000, CSEA had received 1,306 objections to its spending fair share fees on activities not germane to collective bargaining, and 331 challenges to CSEA's determination of the appropriate fee. (Haagensen Decl. ¶ 4).

Plaintiffs claim the notices are constitutionally inadequate under Chicago Teachers Union v. Hudson, 475 U.S. 292 (1986). Although nonunion members may be compelled to pay a share of the cost of collective bargaining, they cannot be compelled to contribute money that will be used to finance ideological causes because this would violate the nonmembers' First Amendment rights. See Abood v. Detroit Bd. of Educ., 431 U.S. 209 (1977). In Hudson, nonunion employees of the board of education brought suit challenging the procedure established pursuant to a collective bargaining contract for determining the proportionate share that nonunion employees were required to contribute to support the union as a collective bargaining agent. See Hudson, 475 U.S. 292. The Supreme Court held the procedure to be constitutionally inadequate and articulated requirements for the union's collection of agency fees. See id. at 309-310.[2]

---

[2] Plaintiffs moved for a Temporary Restraining Order ("TRO") on January 18, 2000 based on defendants' alleged violation of the Hudson notice. The court denied their motion on

4

1  Further, plaintiffs claim that California Government
2  Code Section 3583.5 is unconstitutional. First, plaintiffs argue
3  that the statute unconstitutionally authorizes public employee
4  labor unions to include non-chargeable expenditures, namely,
5  subsidizing the cost of union's lobbying activities on policy
6  preferences. Second, plaintiffs argue that, acting under the
7  statute, defendants will violate the equal protection clause by
8  taking fees from employees without giving them an opportunity to
9  persuade CSEA or their employers not to negotiate for the fee
10 requirement.
11  Plaintiffs ask for declaratory and injunctive relief in
12 addition to nominal damages and equitable relief in the amount of
13 "fair share fees" taken from them.

## II. Class Certification

Plaintiffs move to certify the following class:

> all individuals who are or were, at any time since
> October 10, 1999, non-union "higher education
> employees" in bargaining units 2, 5, 7, or 9
> represented by CSEA.

To be maintained as a class, the action must meet the four prerequisites under Federal Rule of Civil Procedure 23(a) in addition to meeting the requirements of at least one of the three subdivisions of Federal Rule of Civil Procedure 23(b). See Fed. R. Civ. P. 23(a),(b).

///
///

---

the record in open court. Plaintiffs then moved for a preliminary injunction. In an order filed February 15, 2000, the court denied their motion.

A district court must conduct a rigorous inquiry before certifying a class. See <u>General Telephone Co. v. Falcon</u>, 457 U.S. 147, 161 (1982); <u>East Texas Motor Freight Sys. v. Rodriguez</u>, 431 U.S. 395, 403-405 (1977). A district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement. See <u>Califano v. Yamasaki</u>, 442 U.S. 682, 701 (1979); <u>Montgomery v. Rumsfeld</u>, 572 F.2d 250, 255 (9th Cir. 1978). Petitioners have the burden of demonstrating that they satisfy the class certification prerequisites. See <u>Mantolete v. Bolger</u>, 767 F.2d 1416, 1424 (9th Cir. 1985).

The proposed class in this case meets the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(2). The court will accordingly certify the class.

A. <u>Rule 23(a)</u>

The court must determine if the proposed settlement class satisfies the four prerequisites under Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are more commonly known as numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).

///

///

///

1. <u>Numerosity</u>

Rule 23(a)(1) requires a class "so numerous that joinder of all members is impracticable" before the action is class certified. <u>East Texas Motor Freight Sys. v. Rodriguez</u>, 431 U.S. 395, 405 (1977) ("Careful attention" to the numerosity requirement is "indispensable."). Courts have established no absolute limitations for a determination of numerosity. See <u>General Telephone Co. v. Falcon</u>, 446 U.S. 318, 330 (1980). However, a class numbering "several thousand" satisfies the numerosity requirement with ease. See <u>Morgan v. Laborers Pension Trust Fund for Northern California</u>, 81 F.R.D. 669, 676 (N.D. Cal. 1979).

Plaintiffs have met the numerosity requirement. In their verified complaint, plaintiffs allege that the "number of persons in the proposed class is approximately 10,000." (Compl. ¶ 14). Defendants do not object on grounds of numerosity.

2. <u>Commonality</u>

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit construes commonality liberally. See <u>Hanlon</u>, 150 F.3d 1011, 1019. Commonality is satisfied when there are underlying facts or legal theories common throughout the class even if the common facts support different legal theories or common legal theories rest on different facts. See <u>id.</u>

Here, all the parties agree that there are common questions of law and fact. All potential class members received identical <u>Hudson</u> notices. All had fees taken from their wages pursuant to California Government Code Section 3583.5. If the

7

Hudson notice is constitutionally inadequate to one plaintiff, it is inadequate to all.

### 3. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that named plaintiffs have claims "reasonably coextensive with those of absent class members" without the claims having to be "substantially identical." Hanlon, 150 F.3d at 1020.

Here, all nonunion members have a right to the protections afforded by Hudson. Further, if the state statute is unconstitutional, then all nonunion members have a claim. Named plaintiffs' claims are typical.

CSEA argues that named plaintiffs' claims are not typical because: (1) named plaintiffs have objected to the union's fair share fees, but of the 10,000 non union members, only 1,306 have filed such an objection; and (2) challenging a statute on constitutional grounds is inherently ideological and, thus, may not be typical of all fair share fee payers. CSEA brings these arguments again under the prong of adequacy representation as well. The court therefore addresses these arguments below.

### 4. Adequacy of Representation

#### a. Representatives

Rule 23(a)(4) requires representative parties who "will fairly and adequately protect the interests of the class." Fed. Rule Civ. P. 23(a)(4); see Hanlon, 150 F.3d at 1020. A class representative "must be part of the class and possess the same

8

interest and suffer the same injury as the class members." <u>East Texas Motor Freight v. Rodriguez</u>, 431 U.S. 395, 403 (1977) (internal quotations omitted).

Defendants argue that named plaintiffs are not adequate representatives because: (1) there is a conflict between those nonunion members who objected to the fees and those who did not; (2) challenging the statute is inherently ideological; therefore, the court cannot presume all fair share fee payers wish to make such a challenge; and (3) there is a conflict between employees who do not join the union because they are hostile to unions and employees who are happy to be represented by a union but do not want to pay anything more than is required.

### i. <u>Objecting to the Fee</u>

Defendants argue that named plaintiffs cannot adequately represent all the nonunion members because not all of the nonunion members have objected to the union's use of fees for non germane purposes. Defendants cite <u>Weaver v. University of Chicago</u>, 970 F.2d 1523 (6th Cir. 1992). In this case, the Sixth Circuit held that it was not an abuse of discretion for a district court not to certify a class when it had some indication that the plaintiff's interests could be divergent from the proposed class. <u>See</u> <u>id.</u> at 1531. The district court in that case did note that not all the potential plaintiffs had objected to the union's use of fees, however, the crux of its decision was based on the conflict inherent in <u>Gilpin v. AFSCME, AFL-CIO</u>, 875 F.2d 1310 (7th Cir. 1989). As discussed below, the reasoning in <u>Gilpin</u> is inapplicable here.

///

Even though many fair share fee payers did not object to the use of fees, there is no reason to assume that their interests are antagonistic to those of named plaintiffs. An adequate <u>Hudson</u> notice is required before a fair share fee payer must make the decision to object. Therefore, an employee who receives a constitutionally inadequate notice suffers and injury whether or not the employee decides to object. Further, fair share fee payers may challenge the constitutionality of the statute regardless of whether they have objected to the fee. Therefore, there is no conflict. <u>See</u>, <u>e.g.</u>, <u>Hohe v. Casey</u>, 128 F.R.D. 68, 70 (M.D. Pa. 1989)(certifying class even though some plaintiffs objected to the amount of the fee and some did not).

### ii. Challenging the Fee Statute

Defendants argue that it cannot be assumed that all fair share fee payers support the invalidation of the fair share fee statute and thus there is a conflict between those plaintiffs who want the statute overturned and those who do not. Defendants argue this conflict is especially acute because a facial challenge is inherently political and ideological. Defendants cite no authority for the assertion that challenging a statute creates a conflict.

The court recognizes, however, that it is possible that, given proper notice, some fair share fee payers are happy to pay their fair share of union dues to cover the benefits of collective bargaining and do not want the statute to be overturned. This concern can adequately be addressed in the notice that will be sent to the class members. Therefore, using its discretion granted under Federal Rule of Civil Procedure

10

23(d)(2), the court will include a provision in the notice allowing members to opt out if they object to the portion of the action pertaining to the challenge to the constitutionality of section 3583.5 of the California Government Code. See Fed. R. Civ. P. 23(d)(2); EEOC v. Gen. Tel. Co., 599 F.2d 322, 334 (9th Cir. 1979), *aff'd* 446 U.S. 318 (1980)(although absent class members in Fed. R. Civ. P. 23(b)(2) actions are not required to receive notice and opportunity to opt out, court may use its discretion and grant such notice.); Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439, 464-465 (N.D. Cal. 1994)(court maintained discretionary powers to require notice and opportunity for class members to opt out of class action seeking injunctive relief against movie theater chain).[3]

### iii.  Gilpin

Defendants, relying on the Seventh Circuit case Gilpin v. AFSCME, AFL-CIO, 875 F.2d 1310 (7th Cir. 1989), argue that the representatives cannot adequately represent the class because there are two types of employees represented with potentially conflicting interests: (1) the employee who does not join the union because he is hostile to unions and (2) the employee who is happy to be represented by a union but does not want to pay any more for that representation than he is required to pay. See id. at 1313. This court dealt with this argument in certifying the class in Cummings v. Connell, and for the reasons stated below, did not find it persuasive. (Cummings v. Connell, 99-2176 WBS/DAD, December 20, 1999 Order).

---

[3] The court certifies this action pursuant to Federal Rule of Civil Procedure 23(b)(2). See *infra* at II(B).

11

The Seventh Circuit holds that there is a potential conflict among the two types of class members when the named representatives seek "restitution":

> The two types have potentially divergent aims. The first wants to weaken and if possible destroy the union; the second, a free rider, wants merely to shift as much of the cost of representation as possible to other workers, i.e., union members. The restitution remedy is consistent with -- and only with -- the aims of the first type of employee.... Not only would the 'restitution' ... confer a windfall on the nonunion employees, but it might embarrass the union financially. Yet those nonunion employees who, while not wanting to pay more ... than their "fair share" fees, have no desire to ruin the union or impair its ability to represent them effectively might not want so punitive a remedy.

Gilpin, 875 F.2d at 1313.

In the present case, like in Gilpin, plaintiffs seek "equitable relief" of all fees collected. However, returning the full amount paid to the union by a nonmember could be viewed as punitive insofar as it seeks "to deprive the union of fees to which it was, doubtlessly, entitled." See Prescott v. County of El Dorado ("Prescott II"), 177 F.3d 1102, 1109 (9th Cir. 1999).[4] Hence, although plaintiffs' pleadings seek restitution of all fees, it does not appear that the proper remedy in this Circuit for failure to provide an adequate Hudson notice is returning the

---

[4] On January 18, 2000, the Supreme Court granted certiorari and vacated the judgment in Prescott II, remanding to the Ninth Circuit for "further consideration in light of Friends of the Earth v. Laidlaw, 528 U.S. ___ (2000)." Prescott v. County of El Dorado, 120 S. Ct. 929 (2000). On March 2, 2000, the Ninth Circuit noted that Friends of the Earth is a standing case, and the only portion of Prescott II that dealt with standing was part E. Prescott v. County of El Dorado, 2000 WL 232262 (9th Cir. March 2, 2000). Hence, the court reinstated its opinion in Prescott II, with the exception of part E, which it remanded. See id. The cited portion of Prescott II is good law. See id.

12

full amounts paid. See id. The other remedies sought by plaintiffs (nominal and compensatory damages, in addition to injunctive and declaratory relief) are not punitive in nature, hence the conflict in Gilpin is not applicable.[5]

The Ninth Circuit has not commented on the Gilpin decision.[6] It has, however, commented on speculative conflicts. Under existing law in this Circuit, there is no actual conflict because restitution is not an available remedy. Moreover, defendants have shown no facts indicating that proposed class members have an actual conflict. Speculative potential conflicts rarely form the basis of denial of class certification. See Service Employees Local 535 v. County of Santa Clara, 609 F.2d 944, 948 (9th Cir. 1979); Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir. 1975). If, at some later point, it becomes apparent that plaintiffs continue to seek restitution despite the ruling in Prescott II, and defendants are able to show a good faith

---

[5] Defendants argue that, despite the court pointing out in Cummings that restitution is not an available remedy, plaintiffs continue to seek such remedy in the present case. Specifically, plaintiffs ask the court to award either "equitable relief in amount of 'fair share fees' taken from them, plus interest, or alternatively, assuming *arguendo* that Defendant CSEA is entitled to collect any fees in light of its failure to comply with Hudson, award Plaintiffs and members of the proposed class compensatory damages or restitution in the amount of the portion of the 'fair share fees' unlawfully exacted from them, with interest...."(Compl. at 18:2-7). The court notes that plaintiffs only seek to collect the entire fair share fee amount under one alternative. They leave open the possibility that such relief may not be available to them.

[6] The Fourth and Sixth Circuits both have held that a district court judge does not abuse his discretion when, following the reasoning in Gilpin, he does not certify a class. See Kidwell v. Transportation Comm. Int'l Union, 946 F.2d 283, 305-306 (4th Cir. 1991); Weaver v. University of Cincinnati, 970 F.2d 1523, 1530-31 (6th Cir. 1992).

13

dispute among groups of plaintiffs, the court will consider decertification or another appropriate remedy.

      b. Attorneys

    In addition to adequacy of representative parties, the plaintiffs must also show adequate representation by class counsel. See Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994) (adequate representation depends on qualifications of class counsel). Here, plaintiffs are represented by Dylan B. Carp and Milton L. Chappel of the National Right to Work Legal Defense Foundation. Defendants do not question the attorneys' capabilities.

  B. Rule 23(b)

    An action that meets all the prerequisites of Rule 23(a) may be maintained as a class action if it also meets the requirements of at least one of the three subdivisions of Rule 23(b). See also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163 (1974). Plaintiffs seek certification under either Rule 23(b)(1)(A) or Rule 23(b)(2). See Fed. R. Civ. P. 23(b)(1)(A), (b)(2).

    Plaintiffs' proposed class meets the criteria of Rule 23(b)(2). Hence, the court does not address whether it meets the criteria of Rule 23(b)(1)(A). Rule 23(b)(2) provides for a class action when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

///

1    Here, defendants have sent identical <u>Hudson</u> notices to,
2 and have seized fees from, all non-members. Plaintiffs ask for
3 an injunction prohibiting defendants from taking any action to
4 collect fair share fees from plaintiffs and class members until
5 defendants establish a constitutional agency fee procedure. They
6 further ask for a declaratory judgment that defendants have
7 failed to comply with <u>Hudson</u>. Such injunctive and declaratory
8 relief would apply to the class as a whole.

9    Further, defendants are acting pursuant to a statute,
10 California Government Code Section 3583.5. Plaintiffs ask for an
11 injunction enjoining defendants from taking any action to collect
12 fair share fees from plaintiffs and class members until the
13 constitutional deficiencies of the statute have been remedied.
14 Plaintiffs also ask for declaratory relief that the statute is
15 unconstitutional on its face. This injunctive and declaratory
16 relief would also apply to the class as a whole.

17    Defendants protest that a class injunction is
18 unnecessary because any relief secured by plaintiffs would
19 "inure" to benefit all members of the proposed class. First, at
20 least in many jurisdictions, there is no 'need' requirement to
21 obtain a class certification. See <u>Fujishima v. Board of
22 Education</u>, 460 F.2d 1355, 1360 (7th Cir. 1972) ("If the
23 prerequisites and conditions of Fed. R. Civ. P. 23 are met, a
24 court may not deny class status because there is no 'need' for
25 it."); <u>but</u> <u>see</u> <u>Gary v. International Bhd. of Elec. Workers</u>, 73
26 F.R.D. 638, 640 (D.D.C. 1977) (when "the relief being sought can
27 be fashioned in such a way that it will have the same purpose and
28 effect as a class action, the certification of a class action is

15

1 unnecessary and inappropriate.").

2     Second, even if there is a "need" requirement, a need
3 for class certification potentially exists in this case. Because
4 plaintiffs also ask for the return of the portion of the fees
5 "unlawfully taken from them," proposed class members would not,
6 in fact, receive the same relief without a class action.
7 Additionally, plaintiffs request, and may be due, nominal damages
8 for violation of their constitutional rights. See Laramie v.
9 Santa Clara, 784 F. Supp. 1492, 1501 (N.D. Cal. 1992).

10     Although absent class members in a class certified
11 pursuant to Federal Rule of Civil Procedure 23(b)(2) are not
12 required to receive notice and opportunity to opt out, the court
13 may use its discretion to grant such notice and opportunity. See
14 Fed. R. Civ. P. 23(b)(2); EEOC. V. General Tel. Co., 599 F.2d
15 322, 334 (9th Cir. 1979). For the reasons discussed above in
16 paragraph II(A)(4)(ii), the court orders that plaintiffs be given
17 notice of the class action and opportunity to opt out of that
18 portion of the action pertaining to a constitutional challenge to
19 California Government Code Section 3583.5.
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

III. <u>Conclusion</u>

Plaintiffs have met all of the prerequisites under 23(a) and have met the criteria of Rule 23(d)(2). The court will certify the class.

IT IS THEREFORE ORDERED that plaintiffs' motion for class certification be, and the same hereby is, GRANTED. The court certifies the class as described by plaintiffs:

> all individuals who are or were, at any time since October 10, 1999, non-union "higher education employees" in bargaining units 2, 5, 7, or 9 represented by CSEA.

Within 20 days from the date of this Order, counsel shall submit a proposed form of notice to be sent to the class members.

DATED:   March 14, 2000

*[signature]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

United States District Court
for the
Eastern District of California
March 15, 2000

* * CERTIFICATE OF SERVICE * *

2:00-cv-00101

Friedman

v.

CA State Employees

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on March 15, 2000, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

    Dylan Bradley Carp      SH/WBS
    National Right to Work Legal Defense Foundation Inc
    8001 Braddock Road
    Suite 600
    Springfield, VA   22160

    Milton L Chappell
    PRO HAC VICE
    National Right to Work Legal Defense Foundation Inc
    8001 Braddock Road
    Suite 600
    Springfield, VA   22160

    Jeffrey Brian Demain
    Altshuler Berzon Nussbaum Berzon and Rubin
    177 Post Street
    Suite 300
    San Francisco, CA   94108

    Andrea Lynn Hoch
    Attorney General's Office of the State of California
    PO Box 944255
    1300 I Street
    Suite 125
    Sacramento, CA   94244-2550

**Jack L. Wagner, Clerk**

by: Deputy Clerk