Milton L. Chappell, Esq. (*pro hac vice*)
c/o National Right to Work Legal
    Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia  22160
Phone: (703) 770-3329
Fax:    (703) 321-9319
Email: mlc@nrtw.org
*Counsel for Service*

Steven R. Burlingham, Esq. (CBN 88544)
GARY, TILL & BURLINGHAM
5330 Madison Avenue, Suite F
Sacramento, California 95841
Phone: (916) 332-8122
Fax:    (916) 332-8153
Email: steveb@gtblaw.com

*Attorneys for Plaintiffs and the Class*

---

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID M. FRIEDMAN *et al.*,<br><br>On behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>        v.<br><br>CALIFORNIA STATE EMPLOYEES<br>ASSOCIATION *et al.*,<br><br>    *Defendants*. | **Case No. CIV-S-00-00101 WBS/DAD**<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MOTION FOR AWARD<br>OF ATTORNEYS' FEES, COSTS AND<br>EXPENSES PURSUANT TO 42 U.S.C. § 1988**<br><br>**HEARING DATE: July 19, 2010**<br><br>**TIME: 2:00 p.m.**<br><br>**Courtroom of Judge William B. Shubb,<br>Courtroom 5, 14th Floor, Sacramento, CA** |

Pursuant to 42 U.S.C. § 1988, Rules 23(h) and 54(d)(2), FED.R.CIV.P., and Local Rule 293, Plaintiffs David M. Friedman, *et al.*, on behalf of themselves and the class they represent, respectfully request the court to award them their reasonable attorneys' fees and costs in the agreed upon amount of $45,500.00.  In support thereof, plaintiffs state the following:

////

////

////

I.   **INTRODUCTION AND FACTUAL BACKGROUND**[1]

This civil rights case (brought under 42 U.S.C. § 1983) was filed on January 18, 2000, by plaintiffs, nonunion employees of California State University ("CSU"), on behalf of themselves and a class of approximately 10,000 similarly-situated employees in bargaining units 2 (Health Care Support), 5 (Operations Support), 7 (Clerical/Administrative Support), and 9 (Technical Support) represented by Defendant California State Employees Association ("CSEA").[2]

The class action complaint alleged, *inter alia*, that, effective January 1, 2000, CSEA would improperly withhold a portion of union dues from their paychecks without providing them with the procedural safeguards mandated by *Chicago Teachers Union v. Hudson*, 475. U.S. 292 (1986).  Plaintiffs asked for declaratory and injunctive relief[3] in addition to nominal damages.

In November 1999, CSEA mailed a "Notice to Fair Share Fee Payers" ("Original Notice") to all nonunion members of bargaining units 2, 5, 7, and 9 informing them of their "fair share fee" and their right to object and pay a reduced fee.  The Original Notice included a 1998 expenditure report of the CSU Division of CSEA upon which the fee and reduced fee were

---

[1]The facts of this case are more fully discussed in previous orders issued by this court. Memorandum and Order [Denying Preliminary Injunction] (Feb. 14, 2000, Doc. No. 38); Memorandum and Order [Certifying Class] (March 15, 2000, Doc. No. 45), 163 L.R.R.M. (BNA) 2924; and Memorandum and Order [Granting Defendants' Summary Judgment on Counts One and Two] (Nov. 14, 2000, Doc. No. 255).

[2]The current correct name of the defendant initially sued as "California State Employees Association, Local 1000, Service Employees International Union, AFL-CIO, CLC" is California State University Employees Union, SEIU Local 2579, California State Employees Association. Throughout this Notice "CSEA" will be used to refer to that defendant. The current State Controller John Chiang has automatically been substituted as the other defendant in this matter in place of his predecessor and original other defendant, Kathleen Connell.

[3]Plaintiffs moved for a temporary restraining order ("TRO") on January 18, 2000 based on defendants' alleged violation of the *Hudson* notice requirements.  The court denied their motion on the record in open court.  (Doc. No. 12) then moved for a preliminary injunction on the same basis.  In an order filed February 15, 2000, the court denied the motion but noted: "There is at best a possibility that plaintiffs may ultimately succeed in establishing that the notices were procedurally defective because not sent contemporaneously with the audit reports. . . ." (Doc. No. 38, slip op. at 9)  The court also certified a class on March 15, 2000.  (Doc. No. 48).

1   based. At the end of December 1999, CSEA sent an "Amended Notice" further lowering the fee

2   for individuals who objected.  Neither notice included an audit of the financial records.  Instead,

3   both notices stated that a copy of the independent audit was available upon request.

4           On January 22, 2000, defendants sent a copy of CSEA's audited 1998 Financial

5   Statements ("the Audit") to all nonunion members in the four bargaining units.  The Audit

6   included a cover page encouraging all nonunion members to "compare the audit reports to the

7   [CSEA Original] Notice . . . and the Amended Notice . . . ."  CSEA extended the period for

8   nonunion members to object to the expenditure calculation to February 15, 2000.

9           CSEA attached a "January 2000 Amended Notice to Fair Share Fee Payers" to the end of

10   the Audit materials ("January Notice").  The January Notice, among other things, lowered the fair

11   share fee payers' dues, extended the date for individuals to object to the dues, and further reduced

12   the objecting fair share fee payers' dues, but it did not contain the explanation of the basis for the

13   fee contained in the Original and Amended Notices.

14           Subsequently, in April/May, CSEA distributed a new notice that met the requirements of

15   *Hudson*.  *Cummings v. Connell*, 177 F. Supp. 2d 1060, 1065 (E.D. Cal. 2001).

16           On November 15, 2000, the court granted defendants' motion for summary judgment and

17   dismissed counts one and two of the complaint, which had challenged the facial constitutionality

18   of section 3583.5 of the California Government Code, which required nonmembers to either join

19   the union or pay a "fair share service fee."  (Doc. No. 255)

20           The remaining counts of this action, challenging the constitutional adequacy of the

21   Original, Amended and January Notices, were stayed pending final resolution of a related case

22   entitled *Cummings v. Connell*, No. CIV-S-99-2179 WBS DAD (E.D. Cal.), which concerned

23   other bargaining units of state employees represented by Defendant CSEA.  Order Staying

24   Further Proceedings (Doc. No. 261).

25           The parties herein agreed

26           to be bound by the legal principles finally established in *Cummings* and apply them
            to the present case in a good faith effort to resolve this case . . . [and] if it is
27           ultimately determined in *Cummings* that one or more of [Defendant California
            State Employee Association, Local 1000 Service Employees International Union,
28           AFL-CIO's (CSEA's)] *Hudson* notices in that case were legally deficient, then

CSEA will accept, for settlement purposes, that the corresponding one or more of CSEA's *Hudson* notices in this case were similarly deficient.

*Id.*

In *Cummings*, 177 F.Supp.2d at 1060, this court determined that the April and June 1999 notices to nonmembers were not adequate under *Hudson* because CSEA failed to provide a copy of the audit in the absence of a nonmember's formal request. The court also found that the two additional notices mailed in January 2000 were inadequate as a matter of law. Although the first January notice contained an audit, it did not provide a new deadline for objecting. Thus, the court held that it did not provide nonmembers with a reasonable opportunity to object. The second January notice provided a new deadline for objecting, but directed nonmembers to the June 1999 notice and the previously mailed audit for an adequate explanation of the basis for the fee. Thus, the court held that the incorporated notice did not minimize the inherent infringement on nonmembers' First Amendment rights. Therefore, the *Cummings*' plaintiffs were granted summary judgment as to all four notices. *Cummings*, 177 F. Supp.2d at 1064-68, *aff'd on other grounds*, 316 F.3d 886, 890-92 (9th Cir. 2002) (June notice was inadequate for failure to include independent verification of reported expenditures).

Upon remand from, and in accordance with the mandate of, the Ninth Circuit, this court in *Cummings* awarded nominal damages for CSEA's defective notices in the amount of $1.00 to each plaintiff and each member of the class. *Cummings v. Connell*, 2006 WL 1716160 (E.D. Cal. 2006).[4]

Applying the mandate of the Ninth Circuit in *Cummings* to the instant case, on February 24, 2010, the court entered final judgment in favor of plaintiffs and against Defendant CSEA on Counts 3, 4, 5, 7 and 8 of the Complaint. In accordance with the court's Memorandum and Order of November 15, 2000, final judgment was entered in favor of defendants and against plaintiffs on counts 1 and 2. Counts 6, 9 and 10 were dismissed as moot. In accordance with *Cummings*, the court also awarded plaintiffs and the members of the class nominal damages of

---

[4]The *Cummings* court also awarded plaintiffs attorneys' fees and expenses in the unopposed amount of $125,000.00. *Cummings v. Connell*, 2006 WL 3951867 (E.D. Cal. 2006).

1   $1.00 each.

2       Plaintiffs' have simultaneously filed a motion for approval of a class notice, pursuant to

3   Rule 23(h)(1), FED.R.CIV.P., which all parties have approved.  In accordance with the 2001

4   agreement "to be bound by the legal principles finally established in *Cummings* and apply them

5   to the present case in a good faith effort to resolve this case," plaintiffs and Defendant CSEA

6   have agreed that plaintiffs are prevailing parties under 42 U.S.C. § 1988, that, pending the court's

7   approval, Defendant CSEA will pay plaintiffs $45,500.00 in attorneys' fees, expenses and costs

8   to bring this matter to a conclusion and avoid further litigation expenses, and that CSEA will not

9   oppose the motion seeking the agreed-upon attorneys' fees.  Declaration of Milton L. Chappell, ¶

10   17 ("Chappell Decl., ¶ ___"), filed herewith.

11   **II.   REQUESTED ATTORNEY'S FEES AND COSTS**

12       **A.   Prevailing Party Status**

13       Pursuant to 42 U.S.C. § 1988, a court may award reasonable attorneys' fees to a plaintiff

14   who is a "prevailing party" in a civil rights action.  *Texas State Teachers Ass'n v. Garland*

15   *Independent School Dist.*, 489 U.S. 782, 788 (1989).  A "prevailing party" is one who succeeds

16   on any significant issue in litigation, achieving some of the benefit sought in bringing the suit,

17   and resulting in a "material alteration of the legal relationship of the parties."  *Id*. at 792-93.  It is

18   not necessary for plaintiffs to be prevailing parties on every single claim in order to get attorneys'

19   fees under 42 U.S.C. § 1988.  *Jeff D. v. Andrus*, 899 F.2d 753, 765 (9TH CIR. 1989), citing

20   *Hensley v. Eckerhart*, 461 U.S. 424, 428 (1983).

21       To be considered a prevailing party, "a plaintiff must 'obtain an enforceable judgment

22   against the defendant from whom fees are sought, or comparable relief through consent decree or

23   settlement.'"  *G & G Fire Sprinklers, Inc. v. Bradshaw*, 136 F.3d 587, 600 (9th Cir. 1998),

24   quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).  This court certified a class (Doc. No.

25   48) and entered judgment for plaintiffs on their *Hudson* claims and awarded them and the class

26   nominal damages to be paid by Defendant CSEA.  (Doc. No. 277)  This confirms plaintiffs'

27   prevailing party status, which cefendants do not dispute.  *See also Cummings v. Connell*, 2006

28   WL 395187, at *1-*2 (E.D. Cal. 2006); *Hoirup v. Professional Eng'rs in Cal. Gov't.*, 2006 WL

1   2791158, at *2-3, 5 (E.D. Cal. 2006); *Cummings*, 177 F.Supp.2d 1079, 1083, 1090 (E.D. Cal.

2   2001) (awarding § 1988 attorneys' fees in agency fee cases in which defendants conceded

3   plaintiffs' prevailing party status).

4       **B.      Reasonable Number of Hours Expended:  The Lodestar Calculation**

5       The Ninth Circuit has adopted the "lodestar" method for calculating attorneys' fees.

6       Under the lodestar approach, the court first determines a reasonable hourly rate.
        Then it multiplies that rate by the number of hours reasonably expended on the
7       litigation to arrive at a presumptively reasonable fee.  This lodestar amount may
        then be adjusted by considering the twelve factors set forth in *Kerr v. Screen*
8       *Extras Guild, Inc.*, 526 F.2d 67 (9TH CIR. 1975), *cert. denied*, 425 U.S. 951 (1976).

9   *Allen v. Shalala*, 48 F.3d 456, 458 (9th Cir. 1995) (footnote omitted).  There is a strong

10  presumption that the lodestar amount is reasonable.  *Fischer v. SJB-P.C., Inc.*, 214 F.3d 115,

11  1119 n.4 (9th Cir. 2000).  However, the court may adjust the lodestar figure if various factors

12  overcome the presumption of reasonableness.  *Hensley v. Eckerhart*, 461 U.S. 424, 433-34

13  (1983); *Cummings,* 2006 WL 3951867, at *2.  Plaintiffs first discuss their lodestar calculation

14  and then the factors that require adjustment of the lodestar.[5]

15      Attached hereto and made a part hereof as Exhibit A is the declaration of plaintiffs' lead

16  counsel, Milton L. Chappell, ("Chappell Decl.") attesting to his qualifications, the qualifications

17  of co-counsel Dylan B. Carp, and to the reasonable amounts of hours and expenses which have

18  been expended in this case.  The hours expended by Attorneys Chappell and Carp are

19  documented by computer printouts, which are accurate and routinely prepared compilations of

20  the daily time-sheets which are maintained in the normal course of his business. Chappell Decl.,

21  ¶ 18 & Ex. 1.

22      The 536.20 hours were all reasonably expended in the pursuit of this case – characterized

23

24  _____

25      [5]Many of the *Kerr* factors have been subsumed in the lodestar approach.  *Cunningham v.*
    *County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988).  Other than "the amount involved
26  and the results obtained" factor, which is discussed *infra*, none of the other *Kerr* factors justify
    any further adjustment to the award.  Although the court should consider the *Kerr* factors, it need
27  neither address nor discuss each factor.  *G & G Fire Sprinklers, Inc. v. Bradshaw*, 136 F.3d 587,
    600 (9th Cir. 1998); *Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069, 1073 (9th Cir. 1983);
28  *Cummings v. Connell*, 2006 WL 3951867, at *2 & n.4 (E.D. Cal. Nov. 27, 2006).

1    by four significant and contested pretrial motions and hearings, class notices and exclusions,

2    discovery, the entry of judgment, settlement, and the instant attorneys' fees motion.[6] *Id.*, ¶¶ 12, -

3    15, 19-22 & Ex. 1.  This is comparable to the 687.05 lodestar hours used in *Cummings* for a

4    similar amount of work.  *Cummings*, 177 F.Supp.2d at 1088.

5      **C.**      **Reasonable Hourly Rate**

6       The standard hourly rate in the Sacramento area for attorneys with the qualifications of

7    Milton L. Chappell is at least $275.00 per hour, at least $150.00 per hour for Attorney Carp, and

8    at least $75.00 per hour for a paralegal.  *Hoirup*, 2006 WL 2791158, at *4-5 (E.D. Cal. 2006); *cf.*

9    *Cummings*, 2006 WL 3951867, at * 4 (counsel with half the experience of Attorney Chappell

10    was awarded "the current prevailing market rate of $275 per hour" in 2006, having previously

11    been awarded $250 in 2001, *see Cummings*, 177 F.Supp.2d at 1088-89); Chappell Decl., ¶ 23.

12    Moreover, the court  has the discretion to award fees at current rather than historic rates in order

13    to adjust for inflation and loss of the use of funds.  *Gates v. Deukmejian*, 987 F.2d 1392, 1406

14    (9th Cir. 1992).  Here,  plaintiffs request the use of 2006 rates, not 2010 rates.  The court may

15    also rely upon its own expertise and knowledge of the prevailing rates in the Sacramento area in

16    making this determination.  *See e.g.*, *Lindy Bros. Builders v. American Radiator & Sanitary*

17    *Corp.*, 487 F.2d 161, 169 (3rd Cir. 1973); *Akron Center For Reproductive Health v. City of*

18    *Akron*, 604 F.Supp. 1275, 1288 (N.D. Ohio 1985).

19       The following table summarizes the "lodestar amount" of requested attorneys' fees:

| NAME | HOURS | HOURLY RATE | LODESTAR CALCULATION |
|---|---|---|---|
| Carp | 112.90 | $150.00 | $ 16,935.00 |
| Chappell | 403.30 | $275.00 | $110,907.50 |
| Paralegal | 20.00 | $75.00 | $1,500.00 |
| **TOTAL** | 536.20 | | $129,342.50 |

25    *////*

---

27      [6]Not included in the 536.20 lodestar hours are 110.8 hours spent on matters that are
arguably excessive or duplicative and 113 hours of research time expended by Foundation
28    research assistants. Chappell Decl., ¶ 22.

1

**D.      Attorney Out-of-Pocket Expenses**

2

Plaintiffs request that the award include attorneys' out-of-pocket expenses in the amount

3

of $3,765.42 for costs, travel and related expenses, photocopying and other expenses incurred in

4

pursuing their successful claims.  Chappell Decl., ¶ 24 & Ex. 3**.**  These out-of-pocket litigation

5

expenses, which are normally charged to a fee-paying client in the course of providing legal

6

services, are recoverable as part of the attorneys' fee award.  *Harris v. Marhoefer*, 24 F.3d 16, 19

7

(9th Cir. 1994); *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992);

8

*Hoirup*, 2006 WL 2791158, at *5; *Cummings*, 177 F.Supp.2d at 1089-90.

9

The following table summarizes the requested expenses:

10

| DESCRIPTION | AMOUNT |
|---|---|
| Filing & pro hac fees | $230.00 |
| Travel, hotel & meals of counsel to attend TRO hearing | $1,324.85 |
| Preliminary injunction transcript | $18.00 |
| Westlaw research on class action | $52.49 |
| Travel, hotel & meals of counsel to attend preliminary injunction and class certification hearings | $1,990.08 |
| Local counsel fees | $150.00 |
| **Total Recoverable Expenses:** | **$3,765.42** |

11

12

13

14

15

16

17

18

**E.      Reduction In Lodestar Amount To Account for Limited Success**

19

As noted above, although plaintiffs prevailed in their litigation, they did not succeed on all

20

of their claims or all of the monetary relief they had requested.  Where plaintiffs have obtained

21

relief that is "limited in comparison to the scope of the litigation as a whole," a reduced fee

22

award that is "reasonable in relation to the results obtained" is appropriate.  *Hensley*, 461 U.S. at

23

434, 438, 440; *Cummings*, 177 F.Supp.2d at 1084-88.  The Ninth Circuit has approved the use of

24

"a mathematical formula, even a crude one, to reduce the fee award to account for limited

25

success."  *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 904-05 (9th Cir.

26

1995); *Cummings*, 177 F.Supp.2d at 1084-85; *see also Cummings v. Connell*, No. S-99-2176

27

WBS/KJM, Memorandum and Order, slip op. at 6, 9-10 (E.D. Cal. 2003) (*Cummings* Doc. No.

28

254).  Thus, the lodestar amount must be "reduced in a manner reflecting a partial reduction of

1   time expended on the unsuccessful claims and the limited relief obtained."  *Cummings*, 177

2   F.Supp.2d at 1086.

3          On the issues and claims, plaintiffs sought and were granted class certification of all

4   nonunion "higher education employees" of CSU in bargaining units 2, 5, 7, and 9, represented by

5   CSEA.  They secured judgment on counts 3, 4, 5, 7 and 9 of their class action complaint, which

6   challenged the constitutional adequacy of the Original, Amended and January Notices CSEA had

7   sent plaintiffs and class members.  However, they lost on counts 1 and 2, which challenged the

8   facial constitutionality of the statute requiring nonmembers to either join the union or pay a "fair

9   share service fee."  In terms of monetary relief, plaintiffs sought and were awarded nominal

10  damages for defendants' seizure of "fair share fees" in violation of *Hudson* and secured CSEA's

11  ultimate compliance with *Hudson*'s notice requirements.  Chappell Decl., ¶¶ 12-16.

12         While the arguments in support of a temporary restraining order and a preliminary

13  injunction based on defendants' alleged violation of the *Hudson* notice requirements were

14  unsuccessful at the time, those arguments were ultimately successful when the court entered

15  judgment in plaintiffs' favor with respect to the three CSEA notices.  The court predicted this

16  might happen when the preliminary injunction was denied.  "There is at best a possibility that

17  plaintiffs may ultimately succeed in establishing that the notices were procedurally defective

18  because not sent contemporaneously with the audit reports." (Doc. No. 38, slip op. at 9).[7]

19         First, it is appropriate to adjust the lodestar amount by the ratio of the time spent on

20  successful issues and tasks to the total reasonable time spent on the case to account for plaintiffs'

21  partial success on the issues and claims.  *Cummings*, 177 F. Supp.2d at 1086-87.  A review of the

22  reasonable hours expended by plaintiffs' attorneys demonstrates that 383.20 hours were spent on

23  issues and tasks on which plaintiffs ultimately prevailed and 153 hours on issues and tasks on

24

---

25         [7]The Ninth Circuit recognizes that if "a plaintiff ultimately wins on a particular claim, she
    is entitled to all attorney's fees reasonably expended in pursuing that claim-even though she may
26  have suffered some adverse rulings."  *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053
    (9th Cir. 1991).  "Although the TRO and * * * preliminary injunction motion were denied,
27  plaintiffs did ultimately prevail on their challenge to the adequacy of the *Hudson* notices."
    *Cummings*, 177 F.Supp.2d at 1086 n.6.
28

which plaintiffs did not prevail.[8]  Chappell Decl., ¶¶ 19-21 & Ex. 2.  The following chart summarizes the functional work performed by plaintiffs' attorneys and whether their work was ultimately successful.

| Type Of Work Performed | Hours | Success |
|---|---|---|
| Preparation of Class Action Complaint; Case Preparation | 47.10 | Yes |
| TRO Motion, Hearing & Travel | 40.50 | Yes |
| Preliminary Injunction Motion, Hearing & Travel | 73.00 | Yes |
| Class Certification Motion, Hearing & Travel | 73.50 | Yes |
| Client Communications | 28.30 | Yes |
| Class Notice on Counts 1 & 2 (Statutory Challenge) & Objections | 46.60 | No |
| Summary Judgment Motion, Hearing & Travel on Counts 1 & 2 | 36.60 | No |
| Status & Scheduling Report & Conference | 6.50 | Yes |
| Settlement Conference & Discussions | 6.70 | Yes |
| Discovery (Responding to Interrogatories & Requests to Produce) | 14.40 | Yes |
| Depositions of CSEA's Auditor | 69.80 | No |
| Miscellaneous (Local Counsel & Related Case Matters) | 11.70 | Yes |
| Voluntary Dismissal of Plaintiff Ames | 6.30 | Yes |
| Motion for Entry of Judgment (Including Agreement of Parties) | 38.70 | Yes |
| Motion for Attorneys' Fees (Including Settlement of Amount & Notice | 36.50 | Yes |
| **TOTAL** | 536.20 | 383.20 |

Accordingly, plaintiffs' attorneys expended 71% of their time in pursuit of the successful *Hudson* notice challenge.  Chappell Decl., ¶ 21.  Thus, the award should be reduced to 71% of the lodestar amount to reflect the partial success on the issues.

Second, it is appropriate to adjust the lodestar amount further to reflect the limited monetary relief obtained in the award of nominal damages.  Although, the technical nature of a nominal damages award does not affect the prevailing party status, it does affect the award of

---

[8]Of the fifteen tasks listed in the box on page 10, plaintiffs did not prevail on the summary judgment challenging the facial constitutionality of the statute, the class notice allowing class members to exclude themselves from the facial constitutionality portion of the case, counts 1 & 2, and the auditor depositions.  Chappell Decl., ¶ 20.

1    fees and costs. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). In *Cummings* the court reduced the

2    lodestar amount by an additional 25% to reflect the award of nominal damages to plaintiffs and

3    the class members for CSEA's initial deficient *Hudson* notices. *Cummings,* slip op. at 10-11;

4    *Cummings v. Connell*, 2006 WL 1716160, at *2 (E.D. Cal. 2006).

5        The review of plaintiffs' billing records in *Cummings* indicated that approximately 50% of

6    the hours expended were spent in pursuit of the successful *Hudson* notice challenge. Then the

7    court reduced the hours by an additional 25% to reflect the limited success of nominal damages

8    in terms of monetary relief for a total reduction to 25% to account for the limited success

9    plaintiffs achieved overall. *Id.*, slip op. at 10-11. Using the same methodology to this case,

10   plaintiffs' billing records indicate that approximately 71% of the hours expended were spent in

11   pursuit of the successful *Hudson* notice challenge. Reducing those hours by an additional 25% to

12   reflect the limited success of nominal damages in terms of monetary relief, results in a total

13   reduction to 46% of the lodestar rate to account for the limited success plaintiffs achieved overall

14   – both on the issues and the monetary relief. *Accord*, *Marhoefer*, 23 F.3d at 18; Chappell Decl.,

15   ¶ 25.

16       "Plaintiffs prevailing in a civil rights action should ordinarily receive attorney's fees

17   unless special circumstances would render such an award unjust." *Sable Commc'ns v. Pacific

18   Tel. & Tel.*, 890 F.2d 184, 193 (9th Cir. 1989). Because plaintiffs prevailed on the merits of their

19   § 1983 claims, the court should allow them reasonable attorneys' fees and out-of-pocket

20   expenses. *Cummings*, 2006 WL 3951867, at *2. There are no special circumstances which

21   would justify denying an award of fees and costs. *Id.*

22       Forty-six per cent of the lodestar amount of $129,342.50 is $59,497.55. Adding the

23   $3,765.42 in costs, expense, travel and related expenses incurred in pursuing plaintiffs'

24   successful claims to that amount equals $63,262.97. However, as agreed to by the parties,

25   Plaintiffs are only seeking $45,500.00 in attorneys' fees. Chappell Decl., ¶¶ 17, 25-26.

26   **F.      Rule 23(h) Considerations**

27       If attorneys' fees are warranted, the court's primary duty is to determine what constitutes a

28   fair and reasonable award. *Cummings*, 2006 WL 3951867, at *2; *Hoirup*, 2006 WL 2791158, at

1   *3.  Where, as here, the amount of the attorneys' fees award has been agreed upon subject to

2   court approval, the court must ensure that the interests of the class are protected and have not

3   been sacrificed to the advantage of the defendants and the plaintiff's attorneys.  *Zucker v.*

4   *Occidental Petroleum Corp.*, 192 F.3d 1323, 1397 (9th Cir. 1999).

5          Rule 23(h), FED.R.CIV.P., governing attorneys' fees in class actions, makes clear that they

6   may only be paid pursuant to a Rule 54(d)(2) motion, but Rule 54(d)(2)(B) and the commentary

7   to Rule 23(h) establish that fee agreements are relevant to what amount of fees should be

8   awarded.  This is particularly true where the settlement of the fee claim is not linked to

9   compromise of any other claim and is the result of arms-length negotiation by counsel for the

10  parties who are thoroughly familiar with the case and knowledgeable in this area of the law.

11  *Hoirup*, 2006 WL 2791158, at *3; *see also* Chappell Decl., ¶ 17.

12         Like *Cummings*, 2006 WL 3951867, at *2, this case has no danger of collusion between

13  the parties with regard to the agreement for attorneys' fees.  Most importantly, the agreement at

14  issue pertains **ONLY** to the matter of attorneys' fees.  It does not purport to resolve any of

15  plaintiffs' claims on the merits.  Indeed, plaintiffs' claims were resolved in their favor by the

16  judgment entered on February 24, 2010, which was dictated by the 2006 order and judgment in

17  *Cummings v. Connell*, 2006 WL 1716160 (E.D. Cal. 2006).  Thus, the class members have

18  obtained all relief available under controlling law.  The attorneys' fees will be paid by Defendant

19  CSEA and will not come out of the damages awarded plaintiffs and the class.  As the court

20  knows, the parties' attorneys are experienced in litigation involving the issues which were the

21  subject of the complaint.  Accordingly, the payment of the agreed-upon amount of attorneys' fees

22  is reasonable and not contrary to the interests of the class.

23  **III.   CONCLUSION**

24         Using the guidance provided by this court's decisions awarding attorneys' fees in

25  *Cummings*, the parties have settled this claim in order to avoid the time, expense, and uncertainty

26  of a dispute over the appropriate amount.  Their compromise accounts for limitation in the

27  success achieved and unproductive or excessive time expenditures.  For the reasons stated herein,

28  plaintiffs, on behalf of themselves and the class that they have successfully represented, seek an

1   award of their statutorily-entitled attorneys' fees, expenses and costs, in the agreed-upon amount

2   of $45,500.00.

3          DATED: March 24, 2010

                                        Respectfully submitted,

4

5                                       _____

6                                       Milton L. Chappell, Esq. (*Pro hac vice*)
                                        c/o National Right to Work Legal
                                            Defense Foundation, Inc.
7                                       8001 Braddock Road, Suite 600
                                        Springfield, Virginia  22160
8                                       Phone: (703) 770-3329
                                        Fax:    (703) 321-9319
9                                       Email: mlc@nrtw.org

10                                      Steven R. Burlingham, Esq. (CBN 88544)
                                        GARY, TILL & BURLINGHAM
11                                      5330 Madison Avenue, Suite F
                                        Sacramento, California 95841
12                                      Phone: (916) 332-8122
                                        Fax:    (916) 332-8153
13                                      Email: steveb@gtblaw.com

14                                      *Attorneys for Plaintiffs and the Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I hereby certify, under penalty of perjury, that a true and correct copy of this Motion for Award of Attorneys' Fees, Cost and Expenses Pursuant to 42 U.S.C. § 1988 was deposited in the United States Mail, first-class postage pre-paid, addressed to:

Nancy T. Yamada, Attorney
Cal State University Employees Union, SEIU Local 2579
California State Employees Association
1108 "O" Street, 5th Floor
Sacramento, CA 95814
*Attorney for Defendant California State University Employees Union*

I further certify, under penalty of perjury, that I electronically filed with the Clerk of the Court the foregoing Motion for Attorneys' Fees using the CM/ECF system which will send notification of such filing to:

Jeffrey B. Demain
*Attorney for Defendant California State University Employees Union*

Douglas J. Woods
*Attorney for Defendant John Chiang, Controller of the State of California*

All of these actions were taken on the 24th day of March, 2010.

_____
Milton L. Chappell, Esq. (*pro hac vice*)